IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SOCIAL SECURITY ADMINISTRATION                    CREDITOR/APPELLANT

V.                           CASE NO. 5:24-CV-5230

BRETT ALLEN SPENCER                                    DEBTOR/APPELLEE

## OPINION AND ORDER

Before the Court is the Social Security Administration's ("SSA") appeal of the bankruptcy court's order finding that SSA violated the automatic-stay provision of the Bankruptcy Code by collecting upon Debtor Brett Allen Spencer's pre-petition debt from post-petition income. *See* Case No. 5:23-AP-7041 (ECF 52) (W.D. Ark.). The parties agree that all facts at issue on appeal are undisputed, and the Court need only decide contested issues of law. Accordingly, the Court has reviewed the bankruptcy court's legal conclusions *de novo*. *See In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005).

In 1995, Mr. Spencer applied for Supplemental Security Income ("SSI") benefits, which are intended to provide income security to qualifying persons with disabilities. In applying for benefits, he represented to SSA that he was too disabled to work. He received SSI payments for himself and his minor children from 1997 to 2003. But sometime in 2003, SSA discovered that Mr. Spencer had actually been working while receiving benefits. He was brought up on criminal charges for making a materially false statement to SSA concerning his eligibility for SSI benefits and pleaded guilty in federal court on April 11, 2005. The District of Kansas sentenced Mr. Spencer to three years of probation for that felony offense. *See United States v. Spencer*, Case No. 2:04-CR-20068 (D. Kan. 2005) (ECF 78).

1

The parties agree that as of 2005, Mr. Spencer owed SSA $53,256.00 in SSI overpayments. The debt was not made part of the criminal judgment and was instead reduced to a civil monetary penalty. Unfortunately, for the next eighteen years, Mr. Spencer paid next to nothing back on the debt and still owed more than $51,000.00 as he neared retirement age. He turned sixty-two on January 7, 2023, and at that time became eligible for Retirement Insurance Benefits ("RIB"), which are payable to older workers based on the number of years they have paid payroll taxes in jobs covered through the Social Security system. On February 1, 2023, SSA sent Mr. Spencer a letter confirming that he was, indeed, entitled to RIB payments in the amount of $837.00 per month, and advising him that he would not be receiving any checks until 2028 because he still owed SSA a debt of more than $51,000.00. SSA planned to withhold and garnish Mr. Spencer's RIB checks for approximately five years to reimburse itself for the SSI overpayment.

Mr. Spencer applied for a waiver of the overpayment debt. While the request was pending, SSA mailed Mr. Spencer two RIB payments, one in April and one in May 2023, both in the amount of $837.00. On May 30, 2023, SSA rejected Mr. Spencer's waiver request and issued him a decision in writing. He then filed for Chapter 13 bankruptcy on June 15, 2023. *See In re Spencer*, Case No. 5:23-BK-70836 (W.D. Ark.). The bankruptcy petition listed Mr. Spencer's RIB checks as his sole source of income and SSA as his only creditor. *See id.* (ECF 1, pp. 18, 23).

While the bankruptcy was pending, SSA continued to withhold Mr. Spencer's RIB checks, an action he claims violated the automatic-stay provision of the Bankruptcy Code at 11 U.S.C. § 362(a)(1). That provision states that filing a bankruptcy petition "operates

as a stay, applicable to all entities . . . to recover a claim against the debtor that arose before the commencement of the case." In Mr. Spencer's view, though he admits he owed SSA a non-dischargeable debt for fraudulently receiving SSI benefits from 1997 to 2003, he believes SSA was required to pause its debt-collection activity until the bankruptcy was finalized. SSA takes the view Mr. Spencer was not legally entitled to RIB payments until 2028, so the agency was not obligated to send him any checks during the bankruptcy.

On September 29, 2023, in the middle of the bankruptcy case, SSA filed what is known as an "adversary proceeding"—a separate complaint within the bankruptcy case— asking the bankruptcy court to find that Mr. Spencer's SSI debt was non-dischargeable. The adversary proceeding was assigned its own case number, 5:23-AP-7035. Following that, Mr. Spencer filed his own adversary proceeding on October 31, 2023, asking the bankruptcy court to find that SSA was actively violating the automatic stay by withholding his RIB checks during the Chapter 13 proceeding. Mr. Spencer's adversary proceeding was also assigned a case number, 5:23-AP-7041.

On June 5, 2024, the bankruptcy court ruled on SSA's adversary proceeding, finding that Mr. Spencer's SSI debt was not dischargeable in bankruptcy. See 5:23-AP-7035 (ECF 26). The court took longer to decide Mr. Spencer's adversary proceeding. It solicited further briefing on the issues, held an evidentiary hearing, and then entertained post-hearing briefing. Finally, on October 28, 2024, the court issued an order finding that that SSA had violated the automatic stay through its post-petition debt collection. See 5:23-AP-7041 (ECF 52). SSA appealed the ruling to this Court on November 8, 2024. In

the meantime, on February 7, 2025, Mr. Spencer's Chapter 13 petition was dismissed and the case closed. *See* 5:23-BK-70836 (ECF 69).

On appeal, SSA's first argument is that a debtor like Mr. Spencer was not permitted to fund his bankruptcy estate with Social Security benefits. The Court disagrees. As the bankruptcy judge in this case correctly pointed out, SSA's position is contrary to the Eighth Circuit's 2010 decision in *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010). In that case, the Eighth Circuit determined that the Social Security Act at 42 U.S.C. § 407 "operates as a complete bar to the *forced* inclusion of past and future social security proceeds in the bankruptcy estate." *Id.* (emphasis added). However, nothing bars a debtor from *electing* to include his Social Security benefits as property of the estate. "'[S]ocial security payments . . . become part of a debtor's estate *if he chooses to include them*.'" *Id.* (quoting *In re Buren*, 725 F. 1080, 1086 (6th Cir. 1984) (emphasis added)); *In re Franklin*, 506 B.R. 765, 776 (C.D. Ill 2014) ("[N]othing prevents a debtor from voluntarily contributing social security proceeds to the bankruptcy estate or voluntarily using such proceeds to fund a plan.") (citing *Mort Ranta v. Gorman,* 721 F.3d 241 (4th Cir. 2013)).

Next, SSA makes a semantic point that Mr. Spencer was "not actually taking anything from Spencer" when it intercepted his RIB checks during the bankruptcy case because "Spencer is not due any Social Security payment until 2028." (Doc. 5, p. 31). That is incorrect. When Mr. Spencer filed for bankruptcy, he was *eligible* to receive $837.00 per month in RIB payments. The only reason he was not receiving RIB checks at that time was because SSA had decided to *garnish* and *credit* them toward his old SSI debt. In other words, it is beyond dispute that SSA was actively engaged in collecting a debt against Mr. Spencer when he filed for bankruptcy.

SSA's last argument is that its post-petition debt-collection activity is exempt from the automatic stay pursuant to the doctrine of equitable recoupment. According to that doctrine, a debt is exempt "when [it] is inextricably tied up in the post-petition claim." *United States v. Consumer Health Servs. of Am., Inc.*, 108 F.3d 390, 395 (D.C. Cir. 1997). "When a creditor and debtor are mutually indebted, the creditor may recoup his or her debt from the debtor despite bankruptcy, but only if the debts arise from the same transaction." *In re Johnson*, 586 B.R. 449, 455 (N.D. Ill. 2018); *see also In re McMahon*, 129 F.3d 93, 96 (2d Cir. 1997) ("While a 'setoff' is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not."). In SSA's opinion, its obligation to pay Mr. Spencer's RIB and Mr. Spencer's obligation to pay SSA for SSI overpayments arose from the same transaction, which means SSA was permitted to collect its debt during Mr. Spencer's bankruptcy. After careful consideration, the Court rejects SSA's recoupment defense.

"A fundamental tenet of bankruptcy law is that a petition for bankruptcy operates as a 'cleavage' in time." *U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 623 (8th Cir. 1994) (citation modified). "Once a petition is filed, debts that arose before the petition may not be satisfied through post-petition transactions." *Id.* The Eighth Circuit "narrowly construe[s]" the "recoupment exception to this general principle." *In re Terry*, 687 F.3d 961, 963 (8th Cir. 2012). "To justify recoupment in bankruptcy, 'both debts must arise out a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.'" *Id.* (quoting *Dewey*, 31 F.3d at 623).

5

In analyzing whether the two debts at issue here qualify as a single integrated transaction, the Court agrees with the Third Circuit that "[s]ocial welfare payments, such as social security, are statutory 'entitlements' rather than contractual rights." *Lee v. Schweiker*, 739 F.2d 870, 876 (3d Cir. 1984). SSI is a social welfare program funded by general tax revenues, whereas RIB is a retirement program funded by individual workers' payroll tax withholdings. Moreover, the two programs are governed by separate sections of the Social Security Act: SSI eligibility is governed by Subchapter XVI, 42 U.S.C. § 1381, *et seq.*; and RIB eligibility is governed by Subchapter II, 42 U.S.C. § 401, *et seq.* In fact, SSA's implementing regulations specifically refer to "*cross-program* recovery" when discussing how SSI overpayments may properly be deducted from RIB payments. *See* 42 U.S.C. § 1320b-17(a) (emphasis added).

Because Mr. Spencer's SSI debt accrued nearly two decades before he was entitled to RIB payments and because these two programs appear in different sections of the Social Security Act and are subject to very different eligibility requirements, the Court concludes that the two debts did not clearly arise "out of a single integrated transaction." *Terry*, 687 F.3d at 963.[1] This means SSA's debt-collection activity during bankruptcy cannot be justified through the doctrine of recoupment and SSA violated the automatic stay.

---

[1] SSA ends its briefing with an appeal to the Court's sense of fairness. It argues that it would be inequitable to order SSA to reimburse Mr. Spencer for the RIB payments it withheld during bankruptcy because he owed *tens of thousands of dollars* to SSA due to fraud. Though this argument is superficially compelling, the Court is mindful of the fact that *all* debtors who file for bankruptcy—even those who do not seem particularly deserving—are afforded a brief reprieve from debt collection through the automatic stay. Furthermore, the Eighth Circuit "does not require courts to perform an independent 'balancing of the equities' test apart from the same-transaction analysis," *Terry*, 687 F.3d at 964, and this Court will not do so here, given its finding above.

6

**IT IS THEREFORE ORDERED** that the bankruptcy court's Order (Doc. 104) is **AFFIRMED**. Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 23rd day of July, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

7